IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATIONAL INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANZ GLOBAL RISKS U.S. INSURANCE COMPANY, as successor-in-interest to GENERAL FIRE AND CASUALTY COMPANY; and VIAD CORPORATION, as successor-in-interest to GENERAL FIRE AND CASUALTY COMPANY;<br><br>Defendants. | Case No. 8:23-cv-322<br><br>**DECLARATION OF DONALD WURSTER** |

COMES NOW the Declarant, Donald Wurster, and makes this declaration to be filed in the United States District Court for the District of Nebraska as authorized by 28 U.S.C. § 1746.

1. I am the President of Plaintiff National Indemnity Company ("NICO"), am over the age of eighteen, and have personal knowledge of the matters set forth herein.

2. I offer this declaration in support of NICO's brief in opposition to Defendant Viad Corp.'s ("Viad") motion to dismiss.

3. NICO is a Nebraska-domiciled insurance company with its principal place of business at 1314 Douglas Street, Omaha, Nebraska. My office, as the President of NICO, is located in Omaha Nebraska.

4. NICO is a subsidiary of Berkshire Hathaway Inc., which bought the company in 1967. Berkshire Hathaway Inc. is also headquartered in Omaha, Nebraska.

5. NICO filed articles of incorporation with the Nebraska Secretary of State on April 26, 1940, and has maintained its domicile and headquarters in the State of Nebraska for the past 83 years.

6. In 1973, NICO was a Nebraska insurance company with its headquarters in Omaha, Nebraska, at 3024 Harney Street, Omaha, Nebraska.

7. Upon information and belief, General Fire Property & Casualty ("General Fire") entered into a shared liability pool, known as the Fortress pool, along with other reinsurers to issue the casualty facultative reinsurance certificate at issue in this case (the "Certificate").

8. Although I was not personally involved in the placement of Certificate, NICO records confirm that the Certificate was placed through Sterling Offices, Ltd. and its successor, Intere ("Sterling"), a Chicago, Illinois based broker, via negotiations substantially conducted with personnel at NICO's offices in Nebraska.

9. NICO records furthermore confirm that NICO engaged directly with Richter-Robb & Co. ("Richter-Robb"), which was operating out of Denver, Colorado. Richter-Robb, as NICO's agent, then communicated with Sterling. Sterling selected prospective reinsurers, which were presumably Sterling's clients, for potentially providing reinsurance coverage to NICO. Presumably, among these clients, was General Fire.

10. In 1973, during the insurance and reinsurance placement process, Richter-Robb visited NICO's offices in Nebraska. Attached to this Declaration as Exhibit 1 is a true and correct copy of an October 4, 1973, letter from NICO to Richter-Robb memorializing that visit.

11. Sterling's fee for placing this business was paid by the various reinsurers and was taken out of the premium that each was to receive. NICO's records confirm that NICO's payments of the premiums due under Certificate were sent, in full, from Nebraska to Sterling in Chicago. Attached to this Declaration as Exhibit 2 is a true and correct copy of an August 29, 1973, letter from NICO to Richter-Robb stating that NICO would pay the reinsurance premium to Sterling. NICO made no additional payment to Sterling in respect of its own fees.

12. Attached to this Declaration as Exhibit 3 are true and correct copy copies of correspondence between NICO and Richter-Robb, and Richter-Robb and Sterling, to place and managing the reinsurance provided by the Reinsurers.

13. NICO paid premiums on the Certificate from its accounts in Nebraska.

14. NICO's payment of premium taxes occurred in Nebraska.

15. The Certificate was delivered to NICO in Nebraska.

16. Attached to this Declaration as Exhibit 4 is a true and correct copy of a Public Entity Special Comprehensive Liability Policy, Policy No. PE 250001 issued by NICO to the State of Montana for the policy period from July 1, 1973 to July 1, 1975 (the "Policy").

17. The Policy provides coverage for bodily injury arising from Montana's errors or omissions.

18. Although I was not personally involved in the underwriting of the Policy, I am aware based upon information and belief that the Policy was issued from NICO's offices in Nebraska to the state of Montana.

19. The claims at issue in the underlying litigation that arose under the Policy all arose in Montana and the resulting loss to NICO arose entirely from claims brought within the state of Montana (the "Loss").

20. It is my understanding that NICO's claims adjusting and settlement negotiations of the Loss were conducted almost entirely within Nebraska and to some extent Montana.

21. Attached to this Declaration as Exhibit 5 is a true and correct copy of the May 25, 2022, Order approving the final settlement entered between NICO and the state of Montana, which finally resolved NICO's defense and indemnity obligations to the state of Montana for the Libby Mine asbestos claims.

22. All of NICO's activities relating to the loss on the Policy took place in the State of Nebraska: NICO settled the underlying loss with funds from its account in Nebraska, paid to the State of Montana;.and the authorization for payment came from NICO headquarters in Nebraska. The funds owed by Viad under the Certificate would be paid to NICO, headquartered in Nebraska.

23. All of NICO's records regarding the Certificate, including paper files and microfiche, are stored in Nebraska.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 24th day of November, 2023.

Donald Wurster, Declarant

4869-1730-0879, v. 1