2000 WL 34508538 (S.D.N.Y.) (Trial Motion, Memorandum and Affidavit)
United States District Court, S.D. New York.

CONTINENTAL INSURANCE COMPANY, Plaintiff,

v.

ALLIANZ INSURANCE COMPANY and Viad Corp., Defendants,

No. 00 CV 4548 (JSM) (THK).
October 9, 2000.

**Affidavit of Peter J. Novak in Opposition to Plaintiff's Motion for Partial Summary Judgment**

| | | |
|---|---|---|
| STATE OF ARIZONA | ) | |
| | : | ss.: |
| COUNTY OF MARICOPA | ) | |

PETER J. NOVAK, being duly sworn, deposes and says:

1. I am the former General Counsel of Viad Corp. ("Viad"). As such I am fully familiar with the facts set forth herein. I submit this affidavit on behalf of Viad's and Allianz Insurance Company's ("Allianz") opposition to Plaintiffs Motion for Partial Summary Judgment. All exhibits attached hereto are true and correct copies of the documents they represent.

2. In 1964, Viad (formerly known as the Greyhound Corporation) purchased General Fire and Casualty Insurance Company ("GF&C") in order to provide itself with insurance coverage and claims services. However, by 1975, Viad realized that GF&C was not providing a good return on Viad's investment, and Viad decided that GF&C should stop writing new business. Viad further decided to get out of the insurance business entirely by divesting itself of GF&C.

3. In order to divest itself of GF&C, Viad first sought to reinsure 100% of the potential liabilities on all of the GF&C insurance policies and assumed reinsurance contracts written as of October 1, 1975, which are relevant to this case ("GF&C Policies"). The GF&C Policies included occurrence-based policies. With occurrence-based policies, claims typically continue to be made after a policy has expired based upon events that occurred during the policy period. Thus, liabilities such as environmental damage and latent disease claims often remain with policies long after they are written.

4. Viad found a prospective reinsurer in Continental Insurance Company ("Continental") and after several months of negotiations the parties executed the Reinsurance and Assumption Agreement ("Reinsurance Agreement") on September 30, 1975 (effective October 1, 1975). Declaration of James G. Rizzo dated September 15, 2000 ("Rizzo Decl."), submitted by Plaintiff in support of its Motion for Partial Summary Judgment, Exhibit A.

5. Pursuant to the Reinsurance Agreement, Continental assumed and reinsured 100% of the liabilities on the GF&C Policies and agreed to administer the runoff of the GF&C business (in this context, "run-off" refers to the handling of claims that are made on a company's policies after a company ceases writing new business). In return, Viad in essence paid Continental nearly $26 million by transferring to Continental all of GF&C's reserves and reinsurance recoverables. Viad also agreed to make up any deficiencies in the reserves up until the final accounting to be rendered five years later. The New York Insurance Department exercised its authority to approve the Reinsurance Agreement.

EXHIBIT
1

6. After execution of the Reinsurance Agreement, Continental took all of GF&C's files and policies, and from that time forward Viad no longer had direct access to information relating to the handling of GF&C claims. The only information that Viad received regarding the handling of GF&C claims was from Continental, or Continental's wholly-owned subsidiary, Underwriters Adjustment Company ("UAC"), which had assumed responsibility for the handling of the GF&C claims. During the run-off, Viad repeatedly voiced objections to UAC's inefficient claims-handling and service fees which were charged to Viad. Neither Continental nor UAC ever addressed these concerns.

7. In 1976, Viad sought a buyer for GF&C which was now a clean "shell"--*i.e.,* a corporation licensed to do business in all fifty states with no liabilities on a net basis. Viad sold GF&C to Allianz of America, Inc., and Allianz Insurance Company became the successor-in-interest of GF&C. Pursuant to a Stock Purchase Agreement, dated June 30, 1976, Viad agreed to indemnify and hold harmless Allianz of America, Inc. and Allianz Insurance Company against any liabilities that arise as a result of Allianz of America, Inc.'s purchase of GF&C (Rizzo Decl., Exhibit B).

8. The Reinsurance Agreement mandated that Continental provide Viad with a final accounting on GF&C loss and loss expense reserves as of September 30, 1980, or a date thereafter if the parties so agreed, and Viad would then owe Continental the amount by which the present estimate of Continental's ultimate exposure exceeded the initial payment. These reserves included both case reserves and reserves for incurred but not reported ("IBNR") claims. Case reserves are reserves set for claims that have been made by policyholders, but for which the liability has not yet been determined or paid by the insurer. IBNR reserves are reserves set for claims that have occurred, but have not yet been made to the insurer. Thereafter, Viad's obligations respecting the GF&C Policies would cease and Continental would be responsible for all futher losses. The September 30, 1980 date was chosen by the parties because they assumed at the time that the Reinsurance Agreement was executed that the final liabilities of GF&C would be estimable within five years.

9. As the date for the final accounting approached, there were still a large number of open claims on the GF&C Policies; of course, there was IBNR, as well. Nonetheless, Continental did not seek an extension of time from Viad in which to submit its final accounting.

10. As the deadline for submitting its final accounting passed, Continental continued to handle the GF&C claims. In 1982, Continental submitted to Viad its final accounting in the amount of more than $6 million which included deficiencies already incurred as well as an estimation of future costs. (Exhibit 1 hereto is a copy of a May 6, 1982 letter from F.M. Colalucci of Continental to R.O. Lowe of Greyhound.) The $6 million figure represented to Viad both a gross overestimation of future loss and loss expense reserves (both case reserves and IBNR) as well as contested overcharges by UAC. While Viad believed that it owed Continental possibly as much as $4 million to continue the run-off of the GF&C Policies to completion, it refused to pay Continental's inflated bill. (Exhibit 2 hereto is a copy of a May 13, 1982 letter from R.O. Lowe to F.M. Colalucci.)

11. When Viad refused to pay, Continental demanded arbitration in accordance with the Reinsurance Agreement. At issue in the arbitration was the current estimate for case reserves and IBNR on the GF&C business because this would determine what additional amount Viad would owe Continental for its reinsurance obligations. The arbitrators rendered their decision on January 18, 1984, awarding Continental $5,340,250.00, and reaffirming Continental's responsibility to administer the run-off and pay all remaining liabilities of the GF&C Policies (Rizzo Decl., Exhibit D). Notwithstanding the award, Viad believed that it had been unfairly forced to shoulder extra costs because of the inefficient claims handling and service fees of UAC, which was not a party to the arbitration, and Viad weighed its options regarding proceeding against UAC.

12. On February 13, 1984, Continental filed a Verified Petition to Confirm Arbitration Award in this court (Rizzo Decl., Exhibit E).

13. After Continental filed its petition, Viad again voiced its concerns to Continental regarding UAC's claims administration. Despite the fact that this was supposedly the final accounting, Viad was also concerned as to whether Continental would seek additional amounts in the future if the loss experience on the GF&C business deteriorated beyond what was currently anticipated.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

Despite its concerns, Viad recognized that it had to comply with the arbitrators' award, and sought to resolve its issues with Continental. Viad agreed to pay the arbitrators' award, but sought in return a dismissal of the petition to confirm and a release from Continental of any future claims arising out of the arbitrators' award or Reinsurance Agreement. Apparently concerned over the perceived threat to sue UAC for negligent claims-handling, Continental requested mutual releases.

14. In seeking a release from Continental, Viad only sought to be released by Continental from any potential future claims based on an alleged financial obligation owed by Viad to Continental. Viad did not seek to be released from any other non-financial obligations that it owed under the Reinsurance Agreement, such as its duty to cooperate with Continental in prosecuting any subrogation claims that might arise, as required by Article VII of the Reinsurance Agreement.

15. When the parties settled their dispute, agreeing to abide by the arbitrators' award, they drafted and executed a Stipulation and Order for the court to enter. (Exhibit 3 hereto is a copy of the March 15, 1984 Stipulation and Order.) On March 23, 1984, Viad and Allianz executed their release, and on April 2, 1984, Continental and UAC executed their release (Rizzo Decl., Exhibit F and Exhibit G).

16. After execution of the Stipulation and Order and Releases, Continental notified Viad of its decision to integrate the handling of the GF&C claims into its general operation. This was a departure from past procedures when Continental had handled GF&C claims separately in order to be able report to Viad on GF&C claims. Furthermore, since Viad had no further obligations respecting the GF&C claims, Continental also informed Viad that it would no longer report to Viad on its claims-handling activities. After this time, Viad had no access to information relating to Continental's handling of GF&C claims. As of the execution of the Stipulation and Order and Releases, there were still open GF&C claims and additional claims were presumably submitted after that date. To the best of Viad's knowledge, Continental continued to handle all GF&C claims after the Stipulation and Order and Releases were executed and paid all GF&C liabilities that were incurred until 1995, when Continental was acquired by CNA Financial Corporation.

17. In 1995, Allianz was named as a defendant as successor-in-interest to GF&C in *Raclaur. Inc. v. Allianz Ins. Group, et al.* an insurance coverage action in New Jersey state court, allegedly involving GF&C policies written prior to October I, 1975. Allianz sought a defense and indemnification from Continental in this matter. Continental refused to defend or indemnify Allianz, although it never mentioned the 1984 Stipulation and Order and Releases. In light of Continental's refusal, Allianz filed a third-party complaint against Continental in 1999 in the *Raclaur* matter. That claim has since been dismissed.

18. Allianz, in accordance with the Reinsurance Agreement, has also sought from Continental indemnification and a defense in another insurance coverage action in New Jersey state court allegedly involving GF&C policies written prior to October 1, 1975, *Goadstone v. Raclaur. Inc. v. Allianz Ins. Co., et al.* (Exhibit 4 hereto is a copy of a June 15, 1998 letter from Bruce Barrett, counsel for Allianz, to John Lavecchia, counsel for Continental.) Neither a defense nor indemnification from Continental has been forthcoming.

19. On May 4, 1999, The Home Insurance Company ("Home") demanded arbitration against Allianz, as successor-in-interest to GF&C. Once again, Allianz tendered the defense to Continental since the GF&C contracts at issue were written prior to October 1, 1975. This time, Continental agreed to provide a defense subject to a reservation of rights. When asserting its reservation of rights, Continental did not mention the 1984 Stipulation and Order and Releases. (Exhibit 5 hereto is a copy of a June 23, 1999 letter from Michael Morkin, counsel for Continental, to Eileen O'Connor, counsel for Allianz.)

20. Continental first mentioned the 1984 Stipulation and Order and Releases on October 6, 1999. In a letter regarding the Home arbitration, Continental stated that it had "recently discovered the attached Release which absolves the Continental from any further liability in these matters." (Exhibit 6 hereto is a copy of an October 6, 1999 letter from Michael Morkin to Eileen O'Connor.) Allianz reminded Continental that the release was "clearly not intended to alter, nor did it alter, the parties' underlying rights and obligations under the [Reinsurance Agreement]." (Exhibit 7 hereto is a copy of an October 6, 1999 letter from Eileen O'Connor to Michael Morkin.)

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

21. On November 39, 1999, the parties reached an agreement regarding the Home arbitration whereby Continental would "defend and/or negotiate the claim filed by the Home against Allianz," and that, "if it is later determined by a Court, an arbitration panel, or agreement of the parties that the defense and/or liability in this matter properly lies with Allianz, [Viad], on behalf of Allianz, will promptly reimburse Continental for its costs..." (Rizzo Decl., Exhibit M). The parties continued negotiate their differences, but this ended when Continental filed this lawsuit on June 20, 2000.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.