2000 WL 34508537 (S.D.N.Y.) (Trial Motion, Memorandum and Affidavit)
United States District Court, S.D. New York.

CONTINENTAL INSURANCE COMPANY, Plaintiff,

v.

ALLIANZ INSURANCE COMPANY and Viad Corp., Defendants,

No. 00 CV 4548 (JSM) (THK).
September 12, 2000.

**Affidavit of Peter J. Novak in Support of Defendants' Motion to Stay Litigation and Compel Arbitration**

| | | |
|---|---|---|
| STATE OF ARIZONA | ) | |
| | : | ss.: |
| COUNTY OF MARICOPA | ) | |

PETER J. NOVAK, being duly sworn, deposes and says:

1. I am the former General Counsel of Viad Corp. ("Viad"). As such I am fully familiar with the facts set forth herein. I submit this affidavit in support of Viad's and Allianz Insurance Company's ("Allianz") Motion to Stay Litigation and Compel Arbitration. All exhibits attached hereto are true and correct copies of the documents they represent.

2. From 1964 to 1976, Viad (formerly known as the Greyhound Corporation) owned General Fire and Casualty Insurance Company ("GF&C"). By 1975, Viad decided that GF&C would stop writing new business and that Viad would divest itself of GF&C. First, Viad reinsured 100% of the liabilities on all of the GF&C insurance policies and assumed reinsurance contracts written as of October 1, 1975 which are relevant to this case ("GF&C Policies"). Second, Viad sold GF&C, which was fully reinsured for its prior liabilities and licensed to do business in all fifty states, as a clean "shell" - *i.e.,* a corporation with no liabilities on a net basis.

3. As regards the first step, on September 30, 1975, Viad and GF&C executed a Reinsurance and Assumption Agreement with Continental Insurance Company ("Continental") (the "Reinsurance Agreement"), the contract at issue in this litigation. (Exhibit I is a copy of the Reinsurance Agreement.) Pursuant to the Reinsurance Agreement, Continental reinsured 100% of the liabilities of the GF&C Policies, and assumed complete responsibility for administering the claims that remained on GF&C's book after it ceased writing new business. The Reinsurance Agreement contained an arbitration clause which provides that the parties will arbitrate "differences hereafter arising between the parties hereto with reference to any and all transactions or terms and conditions under this contract." This action arises out of Continental's breach of the Reinsurance Agreement, and failure to submit to arbitration to resolve the present dispute in accordance with that Agreement.

4. As regards the second step, on June 30, 1976, Viad and Allianz of America, Inc. executed a Stock Purchase Agreement, whereby Allianz of America, Inc. purchased GF&C and Allianz Insurance Company became the successor-in-interest to GF&C. (Allianz of America, Inc. is the parent company of Allianz Insurance Company.) As part of this transaction, Viad agreed to defend, indemnify and hold harmless Allianz of America, Inc. and Allianz Insurance Company from and against any liabilities imposed upon them as result of the purchase of GF&C. (Exhibit 2 is a copy of the Stock Purchase Agreement.)

EXHIBIT
2

5. In return for reinsuring 100% of the GF&C Policies, Continental received GF&C's full unearned premium reserve as of October 1, 1975, all of GF&C's loss and loss expense reserves as of October 1, 1975, and GF&C's anticipated reinsurance recoveries, which in total amounted to approximately $26 million. Pursuant to the Reinsurance Agreement, Viad also agreed to make up any deficiencies in the loss and expense reserve up until the final accounting to be submitted by Continental on September 30, 1980 (unless Continental requested an extension for submitting the final accounting).

6. Continental's wholly-owned subsidiary, Underwriters Adjustment Company ("UAC"), handled the claims administration of the GF&C Policies for Continental. During the first five years of the run-off, Viad repeatedly objected to certain aspects of UAC's claims administration, including inefficient claims handling and unauthorized service "fees" charged to Viad. Continental and UAC never addressed these issues.

7. At the time the Reinsurance Agreement was executed, the parties believed that the reserves would be estimable at the time that Continental was to provide a final accounting to Viad on September 30, 1980. However, Continental failed to render a final accounting or request an extension by September 30, 1980. Continental continued to administer the run-off of GF&C and pay any liabilities incurred under the GF&C Policies. In 1982, Continental submitted its final accounting to Viad, in which it claimed that Viad owed over $6 million to Continental. It was Viad's position that this amount included an overestimation of future liabilities as well as inappropriate service fees to UAC. Viad demanded that the loss adjustment expenses be adjusted but Continental refused.

8. Continental demanded arbitration against Viad and Allianz on or about September 3, 1982, seeking loss and loss expense reserves in excess of $6 million. Viad asserted that it owed Continental no more than $4 million. The only issue involved in the arbitration was the amount that Viad owed to Continental in the final accounting in light of Continental's unending two-fold obligation to: (1) administer the run-off of the GF&C Policies and (2) assume all of the liabilities under the GF&C Policies. In early 1984, the arbitrators rendered an award to Continental of $5,340,250.00, and reaffirming Continental's responsibility to administer the run-off and pay all remaining liabilities of the GF&C Policies. (Exhibit 3 is a copy of the January 23, 1984 Arbitrators' Decision.)

9. Less than one month after the arbitrators rendered their award, Continental sought to have the award confirmed in the Southern District of New York. (Exhibit 4 is a copy of the Verified Petition to Confirm Arbitration Award filed by Continental on February 13, 1984.) Viad, still dissatisfied with UAC's handling of the run-off, informed Continental that it was considering bringing a separate suit against UAC since UAC was not a party to the Reinsurance Agreement or the arbitration. Continental asserted that any such claims against UAC had been resolved by the arbitrators even though UAC was not a party to the arbitration.

10. Before Viad paid Continental the arbitrators' award, it wanted an assurance from Continental that such payment would forever settle Viad's liabilities for, *inter alia,* any additional short fall on the estimate of the claims which Continental would have to pay under the Reinsurance Agreement. Hence, Viad asked Continental to execute such a release. Continental then requested that the releases be mutual and include UAC. Viad agreed. The parties submitted a Stipulation and Order to the Court dated March 15, 1984, dismissing Continental's law suit. Viad then paid the arbitrators' award which provided that upon such payment Continental would be responsible for all of GF&C's liabilities, and the parties and UAC executed the Releases. (Exhibit 5 is a copy of the executed Stipulation and Order and Releases.)

11. Continental soon thereafter informed Viad that it would integrate the GF&C Policies into its own operation and cease reporting on its claims-handling activities to Viad. Since Viad was completely indemnified on the GF&C Policies, it accepted this arrangement. Continental continued to administer all the GF&C Policies and made all payments on GF&C claims directly to GF&C's policyholders for more than a decade. During this time, Viad and Allianz had no knowledge of, or involvement with, Continental's administration of the GF&C run-off.

12. In 1995, Allianz was named as a defendant as successor-in-interest to GF&C in *Raclaur, Inc. v. Allianz Ins. Group, et al.,* CA No. L-12078-95, an environmental coverage action in New Jersey state court. This action allegedly involved GF&C

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

policies written prior to October 1, 1975. Therefore, pursuant to the Reinsurance Agreement, upon being served with the suit papers, Allianz sought a defense and indemnification from Continental in this matter. Continental refused to defend or indemnify Allianz, although it never mentioned the 1984 Stipulation and Order and Releases.

13. On May 4, 1999, The Home Insurance Company ("Home") demanded arbitration against Allianz, as successor-in-interest to GF&C. Once again, Allianz tendered the defense to Continental since the GF&C contracts at issue were written prior to October 1, 1975. This time, Continental agreed to provide a defense subject to a reservation of rights. When asserting its reservation of rights, Continental never mentioned the 1984 Stipulation and Order and Releases. (Exhibit 6 is a copy of a June 23, 1999 letter from Michael Morkin to Eileen O'Connor.)

14. The first time Continental ever mentioned the 1984 Stipulation and Order and Releases was on October 6, 1999. In a letter regarding the Home arbitration, Continental stated that it had "recently discovered the attached Release which absolves the Continental from any further liability in these matters." (Exhibit 7 is a copy of an October 6, 1999 letter from Michael Morkin to Eileen O'Connor.) Allianz reminded Continental that the release was "clearly not intended to alter, nor did it alter, the parties' underlying rights and obligations under the [Reinsurance Agreement]." (Exhibit 8 is a copy of an October 6, 1999 letter from Eileen O'Connor to Michael Morkin.) The parties were unable to amicably resolve this dispute and Continental filed the present lawsuit on June 20, 2000.

15. On August 8, 2000, Viad and Allianz demanded arbitration against Continental to resolve Continental's breach of the Reinsurance Agreement. In the arbitration, Viad and Allianz will seek, *inter alia* (1) a declaration that Continental must continue to perform under the Reinsurance Agreement and (2) damages for all losses incurred by Viad and Allianz as a result of Continental's breach of the Reinsurance Agreement. (Exhibit 9 is a copy of the August 8, 2000 arbitration demand.)

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.