IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATIONAL INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>ALLIANZ GLOBAL RISKS U.S. INSURANCE COMPANY, *as successor-in-interest to General Fire and Casualty Company*, and VIAD CORPORATION, *as successor-in-interest to General Fire and Casualty Company*,<br><br>Defendants. | NO. 8:23-CV-322<br><br>**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS** |

Plaintiff National Indemnity Company (NICO) has sued defendants Allianz Global Risks U.S. Insurance Company (Allianz) and Viad Corporation (Viad) as successors-in-interest to General Fire and Casualty Company (General Fire) for an alleged failure by Allianz and Viad to make reinsurance payments owed to NICO under a contract with General Fire. In response to the Complaint, Filing 1, Allianz filed an Answer, Filing 18, but Viad moved to dismiss the claims against it for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6). Filing 19. Presently before the Court is Viad's Motion to Dismiss. Filing 19. For the reasons below, the Court denies Viad's Motion.

## I.   INTRODUCTION

On a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the facts are drawn "not [from] the pleadings alone, but [also from] affidavits and exhibits supporting

1

or opposing the motion." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

Conversely, on a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court considers only material drawn from the pleadings. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022). Both parties have submitted material beyond the pleadings for the Court's consideration. Filing 21; Filing 26. This additional material will only be considered when assessing personal jurisdiction.

### A. Factual Background

#### 1. Facts in the Complaint

Plaintiff NICO is a company organized and headquartered in Nebraska. Filing 1 at 2 (¶ 5). Defendant Viad was incorporated in Delaware and has its principal place of business in Arizona. Filing 1 at 2 (¶ 7). The dispute in this case arises out of a reinsurance contract entered into by NICO with Viad's predecessor-in-interest, General Fire. Between 1973 and 1974, NICO had reinsurance coverage from General Fire, which entitled NICO to be reimbursed for payments made by NICO to cover liabilities, expenses, and costs under an insurance policy issued to the State of Montana. Filing 1 at 2 (¶ 4). More recently, in 2022, NICO was required to pay out nearly $160 million to the State of Montana for liabilities arising from that insurance policy. Filing 1 at 1 (¶ 2).[1] Defendants have refused to reimburse NICO for this payment, leading to the present litigation. Filing 1 at 1 (¶ 1).

NICO issued an insurance policy to the State of Montana that was effective between 1973 and 1975. Filing 1 at 3 (¶ 11). During that time, NICO had obtained reinsurance coverage from General Fire, which NICO asserts was "owned by Viad's corporate predecessor the Greyhound

---

[1] These claims arose from "asbestos-related injuries" and "alleged that the state failed to warn [plaintiffs] of potential asbestos exposure in or around the Libby Mine, a mine in Libby, Montana." Filing 1 at 3 (¶ 14).

Corporation." Filing 1 at 3 (¶ 12). In 1976, Viad sold General Fire to the corporate parent of co-defendant Allianz. Filing 1 at 3 (¶ 13). Despite this, NICO avers that "based on information, belief, and communications with Viad, Viad retained some liability associated with the Reinsurance Certificate." Filing 1 at 3 (¶ 13). Neither defendant has reimbursed NICO under the reinsurance contract for the $1,734,335 NICO claims is owed. Filing 1 at 4 (¶ 23).

### 2. Additional Facts Provided by the Parties Related to Viad's Connections to Nebraska

In conjunction with its brief supporting dismissal, Viad submitted a Declaration by Derek P. Linde, the "Chief Operating Officer, General Counsel & Corporate Secretary of Viad." Filing 21-1 at 1 (¶ 1). Linde declared that Viad "is not and has never been an insurer or reinsurer." Filing 21-1 at 1 (¶ 2). Linde further declared that Viad was not incorporated until 1991 as "The New Dial Corp." and then renamed "Viad Corp" in 1996. Filing 21-1 at 1 (¶¶ 4–5). Viad provided documentation from the State of Delaware reflecting this incorporation and subsequent name change. Filing 21-2; Filing 21-3. In addition, Linde declared that Viad does not conduct business in Nebraska, is not authorized to do so, and has no offices, phone numbers, bank accounts, employees, or any other property in Nebraska. Filing 21-1 at 2 (¶¶ 6–8).

Together with its brief opposing dismissal, NICO submitted several exhibits bearing on Viad's alleged connection with the State of Nebraska. See Filing 26 (index of exhibits). NICO submitted a declaration from Donald Wurster, President of NICO. Filing 26-1. Wurster declared that General Fire, Viad's predecessor-in-interest, "entered into a shared liability pool, known as the Fortress pool, along with other reinsurers to issue the casualty facultative reinsurance certificate at issue in this case." Filing 26-1 at 2 (¶ 7). The reinsurance agreement was negotiated at NICO's offices in Nebraska by a Chicago-based broker, Sterling. Filing 26-1 at 2 (¶ 8). "Sterling

selected prospective reinsurers. . . . Presumably, among these clients, was General Fire." Filing 26-1 at 2 (¶ 9). Wurster further declared that "NICO paid premiums on the Certificate from its accounts in Nebraska," that "NICO's payment of premium taxes occurred in Nebraska," and that "[t]he Certificate was delivered to NICO in Nebraska." Filing 26-1 at 3 (¶¶ 13–15). In addition, "the Policy was issued from NICO's offices in Nebraska to the state of Montana." Filing 26-1 at 3 (¶ 18). Moreover, "All of NICO's activities relating to the loss on the Policy took place in the State of Nebraska: NICO settled the underlying loss with funds from its account in Nebraska, paid to the State of Montana[,] and the authorization for payment came from NICO headquarters in Nebraska. The funds owed by Viad under the Certificate would be paid to NICO, headquartered in Nebraska." Filing 26-1 at 4 (¶ 22).

NICO also provided a declaration from Judy Harnadek, Vice President of Resolute Management, Incorporated. Filing 26-7. "Resolute Management functions as NICO's agent for matters involving handling reinsurance claims, including the one that is the subject of this action." Filing 26-7 at 1 (¶ 3). Harnadek declared that she "exchanged correspondence with James Dorian,[2] Viad's agent retained to assess General Fire & Casualty's reinsurance obligations." Filing 26-7 at 1 (¶ 4). That correspondence was in the form of emails and was also provided by NICO. Filing 26-8. James Dorion wrote in an email,

> As it seems the unwinding of the Fortress pool was very disorganized, we can't definitively confirm where things stand. While it appears that Viad does not have any current responsibility for certificates fronted by Travelers, it may be responsible for certain nonfronted Fortress Certificates.
>
> Please send us materials describing the current status and quantum of this claim, including what you calculate as the General Fire & Casualty share/potential share. Viad reserves all rights.

---

[2] It appears from a subsequent exhibit, Filing 26-8, that "Dorian" is properly spelled "Dorion."

4

Filing 26-8 at 1. In another email, Dorion wrote,

> I've been retained by Viad to help assess General Fire & Casualty reinsurance
> obligations, some of which remain the responsibility of Viad and some do not.
> There has been a substantial turnover in Viad's staff and limited records exist. To
> help me determine the correct answer for the particular situation you are asking
> about, please send me the available documentation of General Fire & Casualty
> participation.

Filing 26-8 at 1. These emails appear to connect Viad with the "Fortress Pool" and General Fire
and indicate that Viad "may be responsible for certain nonfronted Fortress Certificates." Filing 26-
8 at 1.

NICO also provided a declaration from Jason W. Grams, who is attorney-of-record for
NICO. Filing 26-9. Grams certified in his declaration "an affidavit executed and submitted by
Viad's General Counsel in opposition to a motion for summary judgment in *Continental Ins. v.
Allianz Ins. Co. and Viad Corp.*, No. 00-cv-4548, 2000 WL 34508538 (S.D.N.Y. Oct. 9, 2002)."
Filing 26-9 at 1 (¶ 3); *see also* Filing 26-10 (affidavit). He also included another affidavit executed
by Viad's general counsel, Peter J. Novak, in support of a different motion in that same case. Filing
26-9 at 12 (¶ 4); *see also* Filing 26-11 (affidavit). These affidavits explain the relationship between
Viad, General Fire & Casualty, and the reinsurance policy at issue in the present case. Viad
purchased General Fire & Casualty in 1964 "to provide itself with insurance coverage and claims
services" but sought to divest itself of GF&C in 1975, when Viad paid Continental Insurance
Company $26 million to reinsure all of Viad's potential liabilities. Filing 26-10 at 1 (¶¶ 2–5). In
1984, following arbitration, Viad and Continental reached an agreement, which included Viad's
"release[ ] by Continental from any potential future claims based on an alleged financial obligation
owed by Viad to Continental." Filing 26-10 at 3 (¶ 14). Separately, in 1976, Viad sold General
Fire & Casualty as a "shell' corporation—"a corporation licensed to do business in all fifty states

with no liabilities on a net basis"—to its current codefendant in this case, Allianz. Filing 26-10 at 2 (¶ 7). Viad also agreed to indemnify and hold Allianz harmless "against any liabilities that arise as a result of Allianz of America, Inc.'s purchase of GF&C." Filing 26-10 at 2 (¶ 7).

### B. Procedural Background

NICO filed its Complaint on July 27, 2023, naming Allianz and Viad as Defendants. Filing 1. The Complaint contains two causes of action: declaratory judgment and breach of contract. Filing 1 at 4–5 (¶¶ 24–30). On October 20, 2023, Allianz filed an Answer and Viad filed the Motion to Dismiss that is presently before the Court.

## II. Analysis

### A. Preliminary Matters

In its brief opposing Viad's Motion to Dismiss under Rule 12(b)(6) for failure to state a claim, NICO cites to supplementary material beyond the Complaint, asserting,

> Viad's arguments also omit that its liability can be inferred from its representatives' own statements, many of which were given under oath. Moreover, . . . Viad's agent represented to NICO that Viad "may be responsible." From Viad's public sworn statements and representations to NICO, NICO reasonably inferred Viad's potential liability. This Court can and should as well.

Filing 27 at 12 (citations to index omitted). In its reply brief, Viad contends that "the Court should treat the motion as one for summary judgment based on the new material submitted by NICO." Filing 30 at 5. Rule 12(d) states, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Here, the Court declines to treat the 12(b)(6) Motion to Dismiss as a Motion for Summary Judgment because although both parties have presented matters outside of the pleadings, that evidence appears to primarily pertain

to the personal jurisdiction analysis, as discussed below. *See also Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) ("This court reviews a district court's decision to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment for abuse of discretion."). Thus, the Court does not consider the supplementary factual evidence beyond the pleadings in ruling on the Motion to Dismiss under Rule 12(b)(6) but does consider such evidence in ruling on the Motion under Rule 12(b)(2).

### B.  The Court Has Personal Jurisdiction Over Viad

*1.  The Parties' Arguments*

Viad argues that the Court lacks personal jurisdiction over NICO's claims against it because "the nature and quality, quantity, and relationship to the cause of action" of Viad's contacts with Nebraska "are all nil." Filing 20 at 7. Viad contends that NICO failed to allege any acts which show that Viad "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Filing 20 at 7. Viad describes its contacts with Nebraska as "random, fortuitous, and attenuated," asserting that merely contracting with a forum resident—NICO—"does not provide the requisite contacts between a non-resident and the forum state." Filing 20 at 7–8. Viad contends that this Court's exercise of personal jurisdiction over Viad "would violate Due Process." Filing 20 at 8.

NICO contends that the Court has specific personal jurisdiction over Viad "as the entity liable on the obligation to NICO flowing from General Fire" and that "General Fire's contacts with NICO and the state of Nebraska are imputed to Viad for the purposes of weighing whether personal jurisdiction exists." Filing 27 at 14. NICO argues that "not only should the Court consider that Viad is the current obligor on a continuing insurance obligation owed to a Nebraska resident, but also that it succeeds to every contact General Fire made in the state." Filing 27 at 14. NICO

highlights several facts included in its index, Filing 26, which it considers important to show Viad's connections to the General Fire reinsurance contract and therefore to Nebraska. These facts include "that before NICO filed this suit, Viad's representative—in writing—admitted to NICO that Viad might be liable on the Certificate," Filing 26-8 at 1; "the Certificate arose from negotiations that physically took place in Nebraska," Filing 26-1 at 2 (¶ 8); "[t]he Certificate was delivered to NICO in Nebraska," Filing 26-1 at 3 (¶ 15); "General Fire received premium payments from NICO in Nebraska," Filing 26-1 at 3 (¶ 13); and "the loss insured by the Certificate creates a debt Viad owes to NICO in Nebraska," Filing 26-1 at 4 (¶ 22). Accordingly, NICO contends that exercising personal jurisdiction is appropriate because "Viad assumed (or retained) liability on General Fire's promise owed to NICO" when "Viad either succeeded to this liability and stands in as a mere continuation of General Fire's guarantee, or [ ] consciously chose to assume that liability." Filing 27 at 18–19. NICO further argues that Viad "cannot employ corporate restructuring to escape the consequences of General Fire's contacts with Nebraska" because "Viad or the entity whose contacts are imputed to Viad undertook purposeful action to reap economic benefit from a Nebraska citizen." Filing 27 at 18–19. NICO summarized its argument: "Viad is alleged to be liable on the Certificate entered into by General Fire, and Viad purposefully availed itself of the benefits and protections of Nebraska law when it assumed or retained liability on that contract for insurance to a Nebraska resident." Filing 27 at 19.

In Reply, Viad contends that NICO "cites only its own Nebraska activities [and] none by General Fire" that indicate any connection with the State of Nebraska, noting that "[t]he risks that NICO insured and that General Fire reinsured were located in Montana" and that "the Reinsurance Certificate, issued 50 years ago, is NICO's sole hook for asserting personal jurisdiction over General Fire in Nebraska." Filing 30 at 9. Viad further argues that "even if Viad were a corporate

successor of General Fire (which it is not), the issuance of the Reinsurance Certificate is at best an 'attenuated affiliation' under *Burger King* [*v. Rudzewicz*, 471 U.S. 462 (1985),] and thus insufficient for jurisdiction." Filing 30 at 10. Viad notes some facts bearing on the connections between General Fire & Casualty and the State of Nebraska:

> General Fire itself did not enter into any contract in Nebraska; as NICO states in its opposition, General Fire "was a member of a reinsurance pool that issued a facultative reinsurance certificate to NICO." The pool manager (Fortress Re) issued the Reinsurance Certificate – not General Fire. Moreover, the Reinsurance Certificate was issued to NICO, an international corporation – not to a natural person seeking life insurance proceeds . . . who might need a court to exercise jurisdiction to protect the individual from having to resort to a "distant forum" to enforce the contract. And, yet further, the underlying insured risks in this case (as NICO has affirmed) are all in Montana – not Nebraska.
>
> So, to recap: NICO asks the Court to assert personal jurisdiction over Viad (a company with no Nebraska connections) as the successor to a parent company that previously owned but sold an insurance company that did not itself issue any policy in Nebraska but instead participated in a reinsurance pool that issued a contract to the massive multinational NICO covering risks in Montana – not Nebraska.

Filing 30 at 10 (internal citations omitted). According to Viad, these connections are insufficient to support the exercise of personal jurisdiction.

### 2. *Rule 12(b)(2) Standards*

On a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the facts are drawn "not [from] the pleadings alone, but [also from] affidavits and exhibits supporting or opposing the motion." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (internal quotation marks and alteration omitted). A plaintiff bears "the burden of establishing a prima facie showing of jurisdiction." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). "A prima facie

9

showing is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (internal quotation marks omitted). However, this "prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *Fastpath*, 760 F.3d at 820 (internal quotation marks omitted). The Court "view[s] the facts in the light most favorable to" the plaintiff. *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023). "The evidentiary showing required at the prima facie stage is minimal." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 951.

"Federal courts apply the long-arm statute of the forum state to determine the existence of personal jurisdiction over the parties." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (subsequent history and internal quotation marks omitted). Nebraska's "long-arm statute," Neb. Rev. Stat. § 25–536, permits jurisdiction to the maximum extent allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Hand Cut Steaks Acquisitions, Inc. v. Lone Star Steakhouse & Saloon of Nebraska, Inc.*, 723, 905 N.W.2d 644, 661 (Neb. 2018); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Thus, "the traditional due process analysis is dispositive[.]" *Kaliannan*, 2 F.4th at 733. "The relevant conduct and connections for the due process analysis depend on whether personal jurisdiction is alleged to be general or specific." *Bros & Sisters in Christ, LLC*, 42 F.4th at 951–52 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). In addition, "Removal, in itself, does not constitute a waiver of any right to object to lack of personal jurisdiction," *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 347–48 (8th Cir. 1988), where the defendants have not "file[d] a single court document following removal, and therefore cannot be deemed to have entered a general appearance." *Norsyn, Inc. v. Desai*, 351 F.3d 825, 828 (8th Cir. 2003).

There are two types of personal jurisdiction: general[3] and specific. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (citation and emphasis omitted). The usual "forums for [exercising general jurisdiction over] a corporation are its place of incorporation and principal place of business." *Ford Motor Co.*, 141 S. Ct. at 1024. Exercising general jurisdiction over a corporation elsewhere requires an "exceptional case" where a "corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014) (cleaned up).

Conversely, "[s]pecific jurisdiction is very different" from general jurisdiction. *Bristol-Myers*, 137 S. Ct. at 1780. As the Supreme Court explained in *Bristol-Myers*, "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." 137 S. Ct. at 1780 (cleaned up). Put differently, specific jurisdiction requires there to "be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Id.* at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (alteration omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781. Thus, "[s]pecific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 141 S. Ct. at 1024.

---

[3] NICO stated that "general jurisdiction [] is not at issue here" and that "Viad's motion challenges the Court's exercise of the latter type—specific jurisdiction." Filing 27 at 13.

"The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). That is, a defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024 (cleaned up). Moreover, these "contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Id.* at 1025 (internal quotation marks omitted). These contacts "must show that the defendant deliberately 'reached out beyond' its home—by for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (internal quotation marks and alteration omitted). "The law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.*

"In determining whether specific jurisdiction exists, [the Eighth Circuit] consider[s] the totality of the circumstances using five factors to guide [the] analysis." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952 (internal quotation omitted). These five factors are: "(1) the nature and quality of [Defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Id.* (alteration in original) (quoting *Whaley*, 946 F.3d at 452). The Eighth Circuit has further explained that the first three of these factors are of "primary importance" while the "fourth and fifth factors carry less weight." *Id.* (quoting *Whaley*, 946 F.3d at 452). The Eighth Circuit has also noted that "[t]he third factor speaks to the particular question of specific jurisdiction." *Whaley*, 946 F.3d at 452.[4]

---

[4] The Eighth Circuit's five-factor standard predates a significant number of Supreme Court decisions dealing with personal jurisdiction. *See Electro-Craft Corp. v. Maxwell Elecs. Corp.*, 417 F.2d 365, 368 (8th Cir. 1969) (observing that the Eighth Circuit previously outlined these five factors to be used in assessing personal jurisdiction in *Aftanse v. Economy Baler Company*, 343 F.2d 187 (1965)). Although this five-factor test originated before the Supreme Court

3.   *Application*

a.   General Fire's Contacts with the State of Nebraska Are Imputed to Viad

As discussed above, NICO argues that the connections between General Fire & Casualty and the State of Nebraska should be imputed to Viad for personal jurisdiction purposes. The Court agrees that this is appropriate at this stage in the litigation, "viewing the facts in the light most favorable to" the plaintiff, *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023), noting that "[t]he evidentiary showing required at the prima facie stage is minimal," *Bros. & Sisters in Christ, LLC*, 42 F.4th at 951. Accordingly, the Court accepts NICO's assertions that "[a]s pled in NICO's Complaint, Viad knew all along that it was liable for General Fire's promise" and that "Viad consciously took on responsibility for General Fire's liability as a purposeful part of a corporate reorganization." Filing 27 at 3. Because General Fire & Casualty's contacts with Nebraska are imputed to Viad for the purposes of ruling on this Motion, the Court must determine whether those contacts suffice for the Court to exercise personal jurisdiction over Viad in a manner that comports with due process. The Court concludes that exercising personal jurisdiction over Viad is consistent with due process.

b.   The Five-Factor Test for Specific Jurisdiction Favors the Exercise of Jurisdiction over Viad

As discussed above, the Eighth Circuit uses a five-factor test to determine whether the exercise of specific jurisdiction comports with due process requirements. These five factors are: "(1) the nature and quality of [Defendants'] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in

---

more clearly distinguished general jurisdiction from specific jurisdiction in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984), the Eighth Circuit has continued to apply this same five-factor test in assessing specific jurisdiction as recently as July 2023. *See Kendall Hunt*, 74 F.4th at 930.

providing a forum for its residents; and (5) convenience of the parties." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952 (citation omitted). Further, the first three of these factors are of "primary importance" while the "fourth and fifth factors carry less weight." *Id.* The Court will address each factor in turn.

### i. Factor One: The Nature and Quality of Defendants' Contacts with the Forum State

As discussed above, in 1973, Viad's predecessor General Fire & Casualty sold a reinsurance policy to NICO, a Nebraska corporation. Filing 26-1 at 2 (¶¶ 7, 10). The transaction was negotiated at NICO's office in Nebraska by a broker who then assembled a shared liability pool of reinsurers, including General Fire, to provide reinsurance coverage to NICO. Filing 26-1 at 2 (¶ 8). NICO paid the premiums due under the reinsurance policy from its bank accounts in Nebraska. Filing 26-1 at 2 (¶ 11). General Fire delivered the policy certificate to NICO in Nebraska. Filing 26-1 at 3 (¶ 15).

The Court concludes that NICO has made the required "minimal" "evidentiary showing" that Viad's contacts with Nebraska are of the nature and quality of contacts that permit the exercise of personal jurisdiction. *Bros. & Sisters in Christ, LLC*, 42 F.4th at 951. NICO directs the Court to *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957), where the Supreme Court held a California court's judgment against a Texas corporation comported with Due Process because "the suit was based on a contract [for insurance] which had substantial connection with that State." The *McGee* court explained,

> The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or

14

> moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process.

*McGee*, 355 U.S. at 223–24. The present case is similar to *McGee*: the reinsurance policy was delivered by General Fire in Nebraska, premiums were paid from Nebraska, and NICO is a Nebraska corporation. Filing 26-1 at 2–3 (¶¶ 7–8, 10–11, 15). In addition, although NICO does not face the same "severe disadvantage if [ ] forced to follow the insurance company to a distant State in order to hold it legally accountable" that an insured individual might face, *McGee*, 355 U.S. at 223, this fact does not bear on whether Viad's due process rights would be infringed by having to litigate in Nebraska.

In addition, the reinsurance contract between General Fire and NICO had a "substantial connection with" the State of Nebraska. *Id.* at 223. The Supreme Court explained in *Burger King* that a "substantial connection" is characterized by a "relationship that envisioned continuing and wide-reaching contacts." 471 U.S. at 480. General Fire's connection to the State of Nebraska was a "relationship that envisioned continuing and wide-reaching contacts." *Id.* Evidencing this, in an affidavit, Peter J. Novak, the former General Counsel of Viad, described the ongoing nature of the policies issued by General Fire, as follows:

> The GF&C Policies included occurrence-based policies. With occurrence-based policies, claims typically continue to be made after a policy has expired based upon events that occurred during the policy period. Thus, liabilities such as environmental damage and latent disease claims often remain with policies long after they are written.

Filing 26-10 at 1 (¶ 3). In other words, General Fire "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" when it "deliberately 'reached out beyond' its

15

home . . . [by] exploiting a market in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1024 (cleaned up). Thus, General Fire's connections with Nebraska are of the "nature and quality" of contacts that support the exercise of personal jurisdiction. *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952. Because General Fire's connections are imputed to Viad at this stage of the litigation, this factor favors exercising personal jurisdiction over Viad.

ii.   Factor Two: The Quantity of the Contacts

General Fire, and by imputation Viad, had numerous contacts with the State of Nebraska. General Fire delivered the policy to NICO in Nebraska, NICO paid premiums under that policy from its Nebraska bank accounts, the reinsurance policy was negotiated in Nebraska, and NICO is a Nebraska corporation. Filing 26-1 at 2–3 (¶¶ 7–8, 10–11, 15). NICO does not indicate how frequently it made payments to Viad or General Fire, nor whether it regularly communicated with either party. *See Signa Development Servs. V. Am. Int'l Materials LLC*, No. 8:23-CV-415, 2023 WL 8528469, at *7 (D. Neb. Dec. 8, 2023) ("While remote communications 'cannot alone provide the minimum contacts required by due process,' the Eighth Circuit has made clear that such communications 'may be used to support the exercise of personal jurisdiction.'" (quoting *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995); *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996))). Thus, because there were numerous contacts with the State of Nebraska, this factor favors exercising personal jurisdiction, albeit slightly, since NICO has not adduced any evidence regarding the frequency of such contacts.

### iii. Factor Three: The Relation of the Cause of Action to the Contacts

Viad's contacts with Nebraska are related to the reinsurance policy which is the subject of NICO's cause of action. Filing 1 at 4–5 (¶¶ 24–30) (seeking declaratory judgment and damages for alleged nonpayment of money owed under the policy). The policy was negotiated, delivered, and paid for in Nebraska. Viad points out that "the underlying insured risks in this case (as NICO has affirmed) are all in Montana," Filing 30 at 10, where NICO paid out nearly $160 million for "asbestos-related injuries," Filing 1 at 3 (¶ 14). But the situs where NICO became liable for a contract of insurance is not relevant to the present litigation—at least not at this stage of the proceedings. *Bristol-Myers*, 137 S. Ct. at 1780 (noting that the "*suit* must arise out of or relate to [Viad's] contacts with the *forum*" (cleaned up) (emphasis in original)). This is not a suit about asbestos-related injuries suffered in Montana mines; rather, this suit is about Viad's alleged liability for reinsuring NICO for payments NICO has made under insurance contracts. Therefore, because only the reinsurance policy (Viad's contact with Nebraska) is related to NICO's cause of action, this factor favors the exercise of personal jurisdiction over Viad.

### iv. Factor Four: The Interest in the Forum State in Providing a Forum for Its Residents

The Court reiterates that the "fourth and fifth factors carry less weight." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952. The fourth factor—the interest in the forum state in providing a forum for its residents—supports the exercise of personal jurisdiction given that NICO is allegedly a Nebraska corporation. Filing 1-7 at 1 (¶ 1). States "obviously ha[ve] an interest in providing a forum for resident corporations." *See K-V Pharm. Co.*, 648 F.3d at 595.

17

v. Factor Five: Convenience of the Parties

The Court presumes that NICO brought this action in a Nebraska court because Nebraska courts are convenient to NICO, as a Nebraska corporation. Viad does not offer any evidence bearing on the question of convenience. Because the Court must view the evidence in a light most favorable to NICO, *Kendall Hunt*, 74 F.4th at 930 (citation omitted), and because Viad has not adduced any facts bearing on convenience, the Court will assume that this factor weighs in favor of exercising personal jurisdiction over Viad.

vi. Weighing the Factors

All factors favor the exercise of personal jurisdiction over Viad for the present suit. Contacts with the State of Nebraska as imputed to Viad include delivering the reinsurance policy to NICO in Nebraska, receiving premium payments under that policy from NICO's Nebraska bank accounts, and causing negotiations in Nebraska with NICO, a Nebraska corporation. Filing 26-1 at 2–3 (¶¶ 7–8, 10–11, 15). All of these contacts are directly related to the alleged reinsurance policy that form the basis of NICO's cause of action. Therefore, the Court has personal jurisdiction over Viad for the specific claims at issue in this case. Accordingly, Viad's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction is denied.

**C. NICO Has Stated a Plausible Claim for Relief**

*1. The Parties' Arguments*

For the purposes of ruling on this Motion to Dismiss for failure to state a claim under Rule 12(b)(6), unlike in ruling in the above Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court considers only the allegations in the Complaint. Viad argues that NICO has failed to state a claim against Viad, asserting,

> The Complaint includes no allegations that NICO and Viad entered into a contract. Instead, the Complaint alleges: (1) NICO obtained reinsurance coverage from

18

General Fire; (2) through a series of corporate transactions, defendant Allianz is General Fire's "successor in interest;" and (3) "Viad retained some liability associated with the Reinsurance Certificate.

Filing 20 at 4. Viad contends that "NICO's deliberatively vague allegation that Viad 'retained some liability associated with the Reinsurance Certificate' does not set forth a valid claim against Viad, because it does not allege any liability to NICO," rendering NICO's allegations against Viad implausible. Filing 20 at 5.

NICO argues that it has stated a claim against Viad, asserting that the Complaint alleges that "Viad breached a promise it owed NICO and thereby caused NICO damages. It does not matter if Viad undertook various corporate reorganizations over the past decades to obfuscate this promise." Filing 27 at 7. NICO directs the Court to two paragraphs in the Complaint:

> 12. General Fire, owned by Viad's corporate predecessor the Greyhound Corporation, issued the Reinsurance Certificate to NICO for the period July 1, 1973, to July 1, 1974, which provided reinsurance coverage to NICO for the risk of loss associated with the Insurance Policy.
>
> 13. In 1976, Viad sold General Fire to Allianz's corporate parent, Allianz of America, Incorporated, pursuant to a stock purchase agreement. Under the agreement, Allianz's corporate predecessor, Allianz Insurance Company, became General Fire's successor-in-interest. But based on information, belief, and communications with Viad, Viad retained some liability associated with the Reinsurance Certificate.

Filing 27 at 9 (quoting Filing 1 at 3 (¶¶ 12–13)). NICO further notes that although it alleged that Allianz is the successor-in-interest to the contract with General Fire & Casualty, under Nebraska law, "corporate successors are not per se immune from suit on the liabilities of their predecessors," meaning Viad may still be liable. Filing 27 at 11 (quoting *Earl v. Priority Key Servs., Inc.*, 441 N.W.2d 610, 613 (1989)). NICO's theory for Viad's liability is that "Viad is the successor that agreed to assume General Fire's liability or [alternatively] that Viad's retention is a continuation of General Fire's liability." Filing 27 at 11. NICO contends that it survives the Rule 12(b)(6)

19

Motion to Dismiss because it "plausibly allege[d] the existence of a contract for which Viad is liable to NICO." Filing 27 at 12.

In Reply, Viad argues that "NICO's opposition shows its failure to state a claim against Viad," asserting, "As a rule, parent corporations are not liable for the debts or actions of their subsidiaries." Filing 30 at 4 (quoting *Paul v. Genesee & Wyoming Indus., Inc.*, 93 F. Supp. 2d 310, 315 (W.D.N.Y. 2000)). Viad further contends, "The same rule applies to insurance contracts issued by a subsidiary," and "Absent special circumstances, not alleged here, a parent corporation is not liable under the policies issued by its subsidiaries. Filing 30 at 4 (citing *Buffalo Xerographix, Inc. v. Hartford Insurance Group*, 540 F. Supp. 3d 382, (W.D.N.Y. 2021); *SUS, Inc. v. St. Paul Travelers Group*, 905 N.Y.S.2d 321, 324 (N.Y. App. Div. 2010)). Viad asserts that "New York law governs on this issue as General Fire was a New York corporation," but that "[i]n any event, Nebraska law is the same as New York's on this issue." Filing 30 at 4 n.1 (citing *Roos v. KFS BD, Inc.*, 799 N.W.2d 43, 51 (2010)).

## 2. *Rule 12(b)(6) Standards*

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022)

20

(quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer*, 25 F.4th at 589 (citation omitted). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. See, e.g., *Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents*

21

*of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable as opposed to factually plausible.

### 3. Application

The Court agrees with NICO that these allegations against Viad suffice to state a plausible claim for relief. Accepting NICO's nonconclusory allegations as true, *Bauer*, 25 F.4th at 589, NICO's Complaint alleged that Viad retains liability for a reinsurance contract issued to NICO by General Fire & Casualty. Filing 1 at 3 (¶¶ 12–13). Moreover, the very case cited by Viad for the proposition that "parent corporations are not liable for the debts or actions of their subsidiaries" in Nebraska specifies that "circumstances exist when a parent corporation can be directly or derivatively liable for the acts of its subsidiary." *Roos*, 799 N.W.2d at 51. These circumstances include,

> (1) [T]he purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) the purchaser corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently to escape liability for such obligations.

*Earl*, 441 N.W.2d at 613. Thus, the statement in the Complaint that "Viad retained some liability associated with the Reinsurance Certificate," Filing 1 at 3 (¶ 13), plausibly alleges that one of the above circumstances is present and that Viad could be liable under the contract. Therefore, because

it is "not just 'conceivable' but 'plausible' that the defendant is liable," *Mitchell*, 28 F.4th at 895

(quoting *Iqbal*, 556 U.S. at 680-83), Viad's Motion to Dismiss under Rule 12(b)(6) for failure to

state a claim is denied.

### III. CONCLUSION

For these reasons, the Court can exercise personal jurisdiction without denying Viad due

process. In addition, NICO has stated a plausible claim for relief. Accordingly,

IT IS ORDERED that Defendant Viad Corp's Motion to Dismiss, Filing 19, is denied.


Dated this 22nd day of January, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge